UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TONYA HALE, | Case No. 2:19-CV-780 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| THE COSMOPOLITAN OF LAS VEGAS, et al., | |
| Defendant(s). | |

Presently before the court is defendant NV Property 1, LLC dba The Cosmopolitan of Las Vegas' ("Cosmopolitan") motion for summary judgment. (ECF No. 58). Plaintiff Tonya Hale ("Hale") responded in opposition (ECF No. 64), to which Cosmopolitan replied (ECF No. 67).

**I.    Background**

This claim arises from a verbal altercation between Hale, a Cosmopolitan employee, and Richard Sherman,[1] a customer. (ECF No. 1). Since 2013, Hale has worked for Cosmopolitan as a table games supervisor. (*Id*. at 3). On January 10, 2018, Sherman and several friends began gambling at Hale's table. (*Id*.). Hale then prevented Sherman from placing bets over the table's maximum betting limit. (*Id*.).

According to Hale, Sherman proceeded to harass Hale by yelling profanity and threatening Hale's job. (*Id*.). This conduct continued for 15 to 25 minutes until Sherman left Cosmopolitan of his own accord. (*Id*.). During this time, Hale avers that no Cosmopolitan

---

[1] Richard Sherman—notably, a professional football player—was formerly a party to this action but was dismissed by the court on March 30, 2020. (*See* ECF No. 36).

**James C. Mahan**
**U.S. District Judge**

employee—including Hale's shift manager, David Bentley—attempted to stop Sherman while he was allegedly harassing her. (*Id.*). Hale alleges that a month later, Sherman returned to the Cosmopolitan and harassed Hale. (*Id.* at 4). After this interaction, Sherman again left Cosmopolitan of his own accord. (*Id.*). Hale contends that Bentley saw the entire interaction and did nothing to prevent Sherman's conduct.[2] (*Id.*).

Hale sued Sherman for verbal assault and intentional infliction of emotional distress. (*Id.*). Hale also sued Cosmopolitan for negligent hiring, supervision, retention, intentional infliction of emotional distress ("IIED") and for Title VII sexual harassment, hostile work environment, and retaliation claims. (*Id.*). Sherman moved to dismiss the claims against him, which the court granted in March 2020 (ECF No. 36); Cosmopolitan also moved to dismiss the negligent hiring, supervision, retention, and intentional infliction of emotional distress claims, which the court also granted. (*Id.*).

Cosmopolitan now moves for summary judgment on the remaining Title VII claims for gender discrimination, hostile work environment, and retaliation. (ECF No. 58).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

---

[2] The court refers to both of these incidents collectively as the "Sherman incidents" throughout this order.

**James C. Mahan**
**U.S. District Judge**

- 2 -

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the non-moving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

   **A.   Title VII Gender Discrimination Claim**

Courts use the *McDonnell Douglas* burden-shifting framework to evaluate discrimination and retaliation claims under Title VII. *See Hawn v. Executive Jet Mgmt.*, Inc., 615 F.3d 1151, 1155-56 (9th Cir. 2010); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). Under this analysis, an employee must first establish a prima facie employment discrimination case. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

If an employee establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1156. If the employer meets this burden, the employee must then raise a triable issue of material fact as to whether the employer's proffered reasons for the terminations are mere pretext for unlawful discrimination. *Noyes*, 488 F.3d at 1168.

A *prima facie* claim of discrimination includes evidence giving rise to the inference that (1) the employee is a member of a protected class; (2) performed the job satisfactorily; (3) suffered an adverse employment action; and (4) the employer treated him/her differently than similarly situated individuals who do not belong to the same protected class. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

Here, it is undisputed that Hale belongs to the protected class of a female, and that she performed her job satisfactorily. Hale has not provided sufficient evidence, however, demonstrating an adverse employment action.

James C. Mahan
U.S. District Judge

- 4 -

Hale alleges that Cosmopolitan completely removed her from craps tables and harassed her about taking leave under the Family Medical Leave Act ("FMLA") due to the Sherman incident. (ECF No. 64 at 19).

An adverse employment action "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Hale admits that there has been no significant change in her salary or benefits. (ECF No. 58-2 at 27). She was not demoted. (*Id.*). And she testified in her deposition that her salary "probably increased." (*Id.*). Furthermore, the court does not consider a change in responsibilities—i.e., Cosmopolitan removing her from craps tables—an adverse employment action. *See Burlington Industries Inc. v. Ellerth*, 524 U.S. 745, 761-2 (1998).

Thus, the court finds that Hale has not presented a *prima facie* case of employment discrimination against Cosmopolitan and hereby GRANTS Cosmopolitan's motion for summary judgment on this claim.

### B. Title VII Retaliation claim

Courts use the same *McDonnell Douglas* burden shifting framework in evaluating retaliation claims under Title VII.

To establish a *prima facie* case of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action. *Cornwell*, 439 F.3d at 1034–35.

Title VII provides two grounds for protected activities: the participation clause and the opposition clause. *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978). The participation clause protects "employees who utilize the tools provided by Congress to protect their rights" against practices "reasonably perceived as discrimination prohibited by Title VII." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). The opposition clause protects "employees who oppose what they reasonably perceive as discrimination." *Id*. Here, it is undisputed that Hale has engaged in protected activity. (*See* ECF No. 58 at 21).

**James C. Mahan**
**U.S. District Judge**

- 5 -

As set forth above, adverse employment action is defined as action by an employer that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

The absence of any adverse employment action against Hale continues to be fatal to her claims. Hale is still employed with Cosmopolitan and concedes that she has had no significant change in employment status. Her rate of pay has not changed—and has "probably increased"—and she has not lost any benefits of her employment. (*See* ECF No. 58-2 at 27, Hale Depo.).

Hale's claims appear to hinge solely on being "completely removed…from craps, her regular game," and disputes surrounding her FMLA leave taken in response to the incidents.[3] Upon review of the record and viewing all facts and evidence in the light most favorable to Hale, the court does not find any genuine issue of material fact as to the Title VII retaliation claims.

As the court explained previously, mere change in employment duties does not likely constitute adverse employment action. *See Burlington Indus., Inc.*, 524 U.S. at 762 (a "bruised ego" is not enough; demotion without change in pay, benefits, duties, or prestige insufficient; reassignment to more inconvenient job insufficient) (citations omitted). Hale presents no evidence that she was specifically hired to work craps tables and that reassignment—or reduction in assignment—was a demotion or other adverse action. In fact, Hale testified in her deposition that she actually "prefer[red]" to be at the blackjack tables over craps. (ECF No. 58-2 at 40).[4] Hence, the court finds no adverse employment action occurred as to Hale's casino floor reassignments following the Sherman incidents.

Moreover, Hale was ultimately allowed to use FMLA leave to take time off after the Sherman incidents (ECF No. 64 at 19–21), but she alleges that the initial resistance she received

---

[3] Hale does not plead any violations of the Family Medical Leave Act in her complaint, so the court merely analyzes her allegations of FMLA disputes within the context of her well-pleaded Title VII allegations—to wit, whether the disagreements about FMLA leave between the parties constituted retaliation or other discrimination.

[4] "And like I said before, honestly I don't care because we do a lot less work in blackjack, you know, now that I've been over there. I prefer to be there." (ECF No. 58-2 at 40).

**James C. Mahan**
**U.S. District Judge**

- 6 -

from Cosmopolitan constituted "adverse employment action" and retaliation based on her reporting of the Sherman incidents. (*Id.*). The court finds these claims unavailing.

It is undisputed that Hale was mistakenly written up for attendance issues that should have been covered under FMLA, (*see* ECF Nos. 64-1 and 67 at 9), and Hale's allegation that this rescinded write-up was evidence of retaliation is conclusory and unsupported by any additional factual data. Thus, the court is not required to accept it for purposes of analyzing summary judgment.

Finally, Hale argues that Cosmopolitan's premature request for FMLA "recertification" was additional evidence of retaliation, but Cosmopolitan is statutorily permitted to request recertification if "circumstances have changed significantly." 29 C.F.R. § 825.308(c)(2). Cosmopolitan avers that Hale's newly developed "pattern of absences on Fridays" (ECF No. 67 at 9) constituted a change in circumstances significant enough to warrant a recertification.[5]

Hale simply submits that the timing of Cosmopolitan's behavior was suspect and "likely related" to the Sherman incidents since the actions occurred after reporting the incidents. The court disagrees and finds that Hale has not presented sufficient evidence to establish a genuine dispute of material fact as to the "retaliatory" nature of Cosmopolitan's actions towards her following the Sherman incidents; nor has Hale provided sufficient evidence that she even suffered an "adverse employment action."

Therefore, the court GRANTS Cosmopolitan's motion for summary judgment on this Title VII retaliation claim.

**C. Title VII Hostile Work Environment Claim**

To state a prima facie case for "hostile work environment" due to sexual harassment under Title VII, Hale must allege that she was subjected to unwelcome sexual advances, conduct or comments; the harassment was based on sex; and the harassment was so severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 US 57, 67 (1986).

---

[5] The court notes that the matter was subsequently resolved in Hale's favor, in any event.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1   Here, Hale alleges two separate verbal altercations constituted sexual harassment.  In the
2  first, more severe encounter on January 10, 2018, which lasted approximately 15 to 25 minutes
3  (ECF No. 64 at 6:15), Sherman became agitated with Hale when she did not allow him to bet
4  over the table limit, pursuant to casino policy.  (ECF No. 1 at 3).  Sherman proceeded to use
5  profanity, saying "F*** you, you mother f***er.  I'll have your f***ing job…I'll call the
6  president tomorrow…don't tell me what to do or what I can do because…I've lost a lot of money
7  here."  (ECF No. 64-1 ¶ 6, Hale Aff.) (ellipses in original).  Maria Torres, a fellow employee
8  who was purportedly dealing at the same table when Sherman confronted Hale, said she heard
9  Sherman say to Hale, "do your job bitch, you're nobody," and also called Hale a "fat bitch one
10 time." (ECF No. 64-2 at 52).

11   During the second incident on February 6, 2018, Hale claims that Sherman continued to
12 harass her "based on her sex, including berating, taunting and antagonizing her by calling out her
13 name from the next table and screaming out loud 'Tonya is wasting my time.' "  (ECF No. 64 at
14 14).  He allegedly further called out saying, "Tonya, why do you have something against me?
15 What have I done to you?" (*Id.*).  Sherman apparently did some pushups in the middle of the
16 floor "to draw attention to himself." (*Id.*).

17   While this behavior is certainly concerning, it does not rise to the level of sexual
18 harassment sufficient to constitute a Title VII hostile work environment claim.  Even drawing all
19 reasonable inferences in Hale's favor, none of the comments appear to be connected to
20 unwelcome sexual advances, comments, or conduct; nor do the comments or Sherman's conduct
21 appear to be based on Hale's sex.

22   Hale argues that Sherman questioned her authority because she was a woman and that the
23 word "bitch" is a gender-based epithet.  The court finds this first allegation conclusory; and even
24 if a jury could agree that the use of the word "bitch" constitutes harassment based on sex, no
25 genuine dispute exists as to whether Sherman's use of the word was severe or pervasive enough
26 to create an abusive working environment.
27   First, Sherman purportedly only used the word during the first incident.  Second,
28 Cosmopolitan removed Sherman from the craps table immediately following the first incident,

**James C. Mahan**
**U.S. District Judge**

- 8 -

trespassing him from the property, and conducting a security investigation of the incident. (ECF No. 67 at 17). And while Sherman was subsequently allowed back into the property by the vice president of security—after admitting fault and assuring that "nothing like that would ever happen again" (ECF No. 67-9 at 5)—Sherman's behavior during the second incident was significantly less severe, lasting only three or four minutes. (ECF No. 67-3 at 27). Hale also testified that she was able to ignore the behavior entirely and carry on with her work.[6] (*Id.*). Finally, the record shows that no such incident like the first one has re-occurred since the incidents.

Finally, the court does not find that Cosmopolitan "ratified or acquiesced" the harassment sufficient to impute liability onto it. *See Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997). An employer may be liable for a private individual's harassing behavior if it does not take "immediate and/or corrective actions when it knew or should have known of the conduct." *Id.*

Here, however, Cosmopolitan did take immediate and corrective action and exercised "reasonable care" to ensure this type of harassment would not continue. While Hale objects to the sufficiency of Cosmopolitan's investigation and its subsequent determination to let Sherman back onto the property without consulting her, liability "cannot be premised on perceived inadequacies in [an] investigation." *Swenson v. Potter*, 271 F.3d 1184, 1198 (9th Cir. 2001).

Therefore, the court GRANTS Cosmopolitan's motion for summary judgment on the hostile work environment Title VII claim.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Cosmopolitan's motion for summary judgment (ECF No 58) be, and the same hereby is, GRANTED. All remaining claims are dismissed.

---

[6] Indeed, Hale admits that "verbal abuse" in her line of work was "not out of the norm." (ECF No. 64 at 16). This is further corroborated by Hale's male co-workers who indicate that they were subject to the same profanity and obstreperous behavior from Sherman. (*See* ECF No. 67-6 at 3).

**James C. Mahan**
**U.S. District Judge**

- 9 -

1   The clerk of the court is hereby instructed to close the case.

2   DATED July 26, 2022.

_____
UNITED STATES DISTRICT JUDGE